UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) |   |
|---|---|---|
|  | ) |   |
| Plaintiff, | ) |   |
|  | ) |   |
| v. | ) | Case No. 14-CR-0174-CVE |
|  | ) |   |
| ANDREW SCOTT PIERSON, | ) |   |
| a/k/a/ Drew, | ) |   |
|  | ) |   |
| Defendant. | ) |   |

## OPINION AND ORDER

Now before the Court is defendant Andrew Scott Pierson's motion to quash search warrant,[1] and motion to suppress. Dkt. ## 19, 20.[2] Defendant is charged by indictment with one count of being a felon in possession of firearms and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Dkt. # 4. Defendant seeks to suppress a search warrant and all tangible and intangible evidence seized pursuant to the search warrant and derived directly and/or indirectly therefrom, arguing that the evidence relied on in the search warrant affidavit was insufficient to establish probable cause. Plaintiff filed a response (Dkt. # 22) to defendant's motion.

**I.**

---

[1] The remedy for an unreasonable search and seizure is exclusion of the evidence from the government's case-in-chief. Logistically, a search warrant that has already been executed cannot be quashed. A review of federal cases in which defendants filed motions to quash executed search warrants suggests that federal courts simply treat such motions as motions to suppress evidence. See U.S. v. White, 2013 WL 599179 (W.D. Mo. Feb. 11, 2013); U.S. v. Brown, 2008 WL 5550261 (E.D. Wis. Dec. 11, 2008); U.S. v. Moghaddam, 2008 WL 4540415 (S.D. Fla. Oct. 9, 2008). In each case, the defendant argued that the affidavit submitted in support of the search warrant failed to establish probable cause. Therefore, the Court will treat defendant's two-part motion as a motion to suppress evidence.

[2] Defendant filed the motions as one document, which was redocketed by the Clerk's Office as two docket numbers (19, 20).

On September 23, 2014, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Officer Holley J. Campbell applied to a United States magistrate judge for a search warrant for the residence located at "54990 E 340rd, Jay, Oklahoma."[3] Dkt. # 19-1. Officer Campbell's affidavit in support of the search warrant provides the following information:

> In May 2013, ATF agents conducted an undercover purchase of an "Uzi Parts Kit" from Kyle Wick via the Internet auction site Gunbroker.com. The ATF Firearms Technology Branch (FTB) examined the "parts kit" and found it to be an Uzi receiver that had been cut in five different locations and then welded back together. FTB noted that this is not an approved destruction method for an Uzi machinegun. Therefore, FTB determined that the receiver, being readily restorable, is a "machinegun" as defined in 26 U.S.C. § 5845(b).[4] Based on FTB's examination

---

[3] The address is listed in this manner ("340rd") on the search warrant. The proper phrasing of the address is: 54990 E 340 Road, Jay, Oklahoma.

[4] Section 5845(b) of Title 26 of the United States Code reads:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b). Under 18 U.S.C. § 922(b)(4), it is a crime "for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver . . . to any person any . . . machinegun (as defined in section 5845 . . .)" except as authorized by the Attorney General. In addition, under 18 U.S.C. § 922(o), it is a crime "for any person to transfer or possess a machinegun[,]" except for a transfer to or by, or possession by or under the authority of, the United States, a State, or a department or agency thereof.

of the purchased "parts kit," ATF executed a search warrant on Wick's residence in March 2014, and recovered records indicating that Wick had sold 94 of the same "parts kits" to individuals throughout the United States. One of those "parts kits" had been purchased by an individual with the username Ozarkcart on Gunbroker.com. Agents identified Ozarkcart as being defendant Andrew Scott Pierson, and confirmed that Pierson had purchased an Uzi demilled receiver on October 2, 2013. Pierson had also purchased a M53/MG42 demilled receiver on September 21, 2013. ATF agents believed that the "parts kits" purchased by Pierson had not been properly demilled and were readily restorable to a functioning machinegun.

A query of Pierson on NCIC revealed prior federal felony convictions in New York.[5]

ATF's investigation revealed that Pierson, utilizing the username Ozarkcart, had made at least 221 separate purchases on Gunbroker.com between September 2012 through July 2014, including the purchase of 2000 rounds ammunition.[6] The affidavit notes that "Pierson being a convicted felon would make possession of ammunition illegal."

Agents found that, according to the Delaware County Treasurer's Office, Pierson is listed on the 2013 tax rolls as owning land located at 54990 E 340 Road, Jay, Oklahoma. Moreover, the Oklahoma Secretary of State website shows that, as

---

[5] On July 13, 2006 in the Eastern District of New York, Pierson pleaded guilty to three felonies. He was sentenced to 41 months of imprisonment.

[6] Section 921(a)(17)(A) defines "ammunition" as "ammunition or cartridge cases, primers, bullets, or propellent powder designed for use in any firearm." 18 U.S.C. § 921(a)(17)(A).

of July 24, 2014, Pierson is the registered agent for Ozark Cartridge and Die Supply, and lists his address as 54990 E 340 Road, Jay, Oklahoma. Further, the Delaware County Assessor's Office verified that, as of August 14, 2014, Pierson owns the property located at 54990 E 340 Road, Jay, Oklahoma. Finally, the Oklahoma Drivers License database records for the license number pertaining to Pierson lists a home address of 54990 E 340 Road, Jay, Oklahoma.

Officer Campbell's affidavit states that she has investigated numerous violations of federal firearms laws since 2005, and that she has had training and experience in the investigation of individuals that illegally possess firearms. Officer Campbell asserted that, based on that training and experience, she knows that most people store their firearms and firearm-related documents in their homes, businesses, and vehicles, and they usually possess other items related to firearms, such as ammunition. Further, Officer Campbell averred that she knows that firearms are tangible objects of habitual retention; therefore, once a person acquires a firearm, he or she usually keeps said weapon for a long period of time.

Dkt. # 19-1, at 4-11.

Based on the information contained in Officer Campbell's affidavit, Magistrate Judge Paul J. Cleary issued the search warrant on September 23, 2014 for the residence located at "54990 E 340rd, Jay, Oklahoma." Id. at 12. The search warrant allowed officers to seize: firearms; ammunition; records, notes, and receipts showing the acquisition and disposition of firearms, ammunition, or firearm parts and accessories; financial documents utilized in the purchase of firearms, ammunition, or firearm parts and accessories; desktops, laptops, tablet computers, and cell

phones that could be used to access the interest and process transactions related to the purchasing of firearms, ammunition, or firearm parts and accessories; and items to establish the persons who have control, possession, custody or dominion over property searched and from which evidence is seized. Id. at 3, 12.

Agents executed the search warrant on September 30, 2014, and recovered three rifles; three pistols; several thousand rounds of ammunition; a sealed box addressed to 1208 Paseo de Danubio Rd., Laredo, Texas, containing another box addressed to Pierson, 54990 E 340 Rd., Jay, Oklahoma, containing a jig used to drill a hole in an AR type firearm to install an auto sear; a bank statement for Pierson Farms, 54990 E 340 Rd., Jay, OK, documenting several thousand dollars of deposits made in Laredo, Texas, and documenting several purchases from companies that sell firearms, firearm parts, and ammunition; and Ozark Cartridge and Die Supply checks. Dkt. # 2, at 4-5.

Betty Kendall, defendant's mother, was present on the premises at the time of the search. Kendall stated that Pierson was in Texas at the time. Id. at 4, 6. Kendall stated that the three rifles belong to Pierson, and that the three pistols were acquired by Pierson, but she did not know from where he acquired them. Id. at 6. Kendall stated that she routinely receives packages for Pierson at the residence, and she mails them to an address in Laredo, Texas at Pierson's request. Id. That same day, ATF Agents executed a search warrant at 1208 Paseo de Danubio Road, Laredo, Texas,[7] and recovered machine gun parts, firearms kits, trigger kits, magazines, firearm stocks, and tools during the search. Id.

---

[7] Defendant does not challenge that there was probable cause to obtain the Laredo warrant. He might argue that this warrant was obtained based on evidence obtained from the first search warrant (e.g., the sealed box addressed to the address in Laredo); however, agents also obtained the Laredo address through their interview with Kendall.

5

The parties called no witnesses at the hearing on the motion to suppress held February 6, 2019, but each side made legal arguments.

## II.

Defendant challenges the facial validity of the search warrant and argues that the evidence relied on in the affidavit is insufficient to establish probable cause. Specifically, he argues that the affidavit: (1) lacks support for the proposition that there is a fair probability that contraband or evidence of a crime will be found in a particular place; (2) relies on the purchase of items by Ozarkcart from three months to almost one year before the date of the search warrant; (3) does not explain how the affiant reached the conclusion that Ozarkcart was/is defendant; and (4) does not provide any information about any attempt to determine whether defendant resided at the place to be searched.

The Supreme Court has stated that probable cause is a "fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213 (1983). In the context of search warrants, the Tenth Circuit requires that a magistrate issuing a search warrant find that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Tisdale, 248 F.3d 964, 970 (10th Cir. 2001) (quoting Gates, 462 U.S. at 238). "Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched." United States v. Corral-Corral, 899 F.2d 927, 937 (10th Cir. 1990). A magistrate may consider the affiant's experience as part of his probable cause determination. United States v. Soussi, 29 F.3d 565, 569 (10th Cir. 1994). In reviewing the search warrant affidavit, this Court must "interpret [the affidavit] in a common sense and realistic fashion." United States v. Grimmett, 493 F.3d 1263, 1270 (10th

Cir. 2006). A reviewing court must show great deference to the magistrate's finding of probable cause, and the magistrate's finding should be upheld if the magistrate had a "'substantial basis' for determining that probable cause existed." United States v. Perrine, 518 F.3d 1196 (10th Cir. 2008) (quoting United States v. Artez, 389 F.3d 1106, 1111 (10th Cir. 2004)).

A. Fair Probability that Evidence of a Crime Will Be Found in a Particular Place

Defendant's primary argument is that the affidavit provides no information as to whether the "parts kits" or demilled receivers allegedly purchased by defendant were, in fact, illegal for an individual to purchase and possess. Defendant argues that, therefore, the affidavit provides no basis for determining that evidence of illegal firearms would be found inside the residence.

As summarized in detail above, the affidavit clearly states that ATF agents had determined that the "Uzi parts kit" purchased from Kyle Wick via Gunbroker.com was not properly destructed and was readily restorable. ATF determined that, because a readily restorable receiver is considered a "machinegun" under § 5845(b), the "parts kit" sold to them by Wick via Gunbroker.com was, in fact, a "machinegun." Based on this information, ATF agents executed a search warrant on Wick's residence and found that Wick had sold 94 of "the same parts kits" to individuals throughout the United States. Dkt. # 19-1, at 5 (emphasis added). ATF agents discovered that one of those parts kits had been sold to Ozarkcart, who ATF identified as being Pierson. As the affidavit states, Pierson had, in fact, purchased a Uzi demilled receiver in 2013. Agents also discovered that Pierson had purchased a M53/MG42 demilled receiver in 2013.

Although the affidavit does not allege that the ATF officers examined the specific parts kits purchased by defendant, ATF determined that defendant had purchased the "same" parts kit (the Uzi parts kit) as the one purchased and examined by ATF, in addition to a similar parts kit (the

7

M53/MG42 parts kit). Moreover, defendant purchased the parts kit from the same person who had sold the parts kit to ATF. Finally, defendant purchased the parts kit just a few months after ATF had purchased its parts kit. Because the Uzi parts kit examined by ATF was not properly demilled and was easily restorable to a functioning machinegun, ATF officers reasonably believed that the parts kits purchased by defendant were "not properly demilled and [were] readily restorable to a functioning machinegun." Accordingly, the Court finds that the affidavit provides sufficient information to establish probable cause to believe that the parts kits purchased by defendant were not properly demilled and were readily restorable machineguns. Therefore, defendant purchased "machineguns," as that term is defined in § 5845(b).[8]

Section 922(o) of Title 18 of the United States Code makes it a crime for any person to possess a machinegun.[9] In addition, § 922(g)(1) provides that it shall be unlawful for any person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . to possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." § 922(g)(1). The affidavit clearly establishes that in 2006, defendant pleaded guilty to three felonies and was sentenced to 41 months of imprisonment; therefore, at the time defendant purchased the parts kits in 2013, he was a convicted felon. Accordingly, the affidavit provides sufficient

---

[8] As noted, § 5845(b) defines "machinegun" as any weapon that "<u>can be readily restored to shoot</u>, automatically more than one shot, without manual reloading by a single function of the trigger." 26 U.S.C. § 5845(b) (emphasis added).

[9] The term "machinegun" has the same meaning under 18 U.S.C. § 922 as it does under § 5845(b). See 18 U.S.C. § 921(a)(23).

information to establish probable cause to believe that it was illegal for defendant to purchase and possess the demilled receivers.

In any event, the affidavit makes clear that defendant purchased 2000 rounds of ammunition on June 28, 2014. Dkt. # 19-1, at 7. As the affidavit states, it is illegal for Pierson, being a convicted felon, to possess ammunition. Id.; see 18 U.S.C. § 922(g)(1). On that basis alone, the magistrate judge had sufficient information to find that there was probable cause to believe that defendant had engaged in illegal conduct.

Moreover, the affidavit provides sufficient information to establish a fair probability that the evidence of the crime would be found in defendant's residence. An affidavit must show a "nexus between . . . suspected criminal activity and the place to be searched, and a court may not arrive at probable cause simply by piling hunch upon hunch." United States v. Roach, 582 F.3d 1192, 1200 (10th Cir. 2009) (quotation omitted). However, the Tenth Circuit has found that courts have "never required, for example, that hard evidence or 'personal knowledge of illegal activity' link a Defendant's suspected unlawful activity to his home." Id. (quoting United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two and 43/100 Dollars ($149,422.43) in U.S. Currency, 965 F.2d 868, 874 (10th Cir. 1992)) (citations omitted). "Instead, [the circuit court] [has] indicated that a sufficient nexus is established once 'an affidavit describes circumstances which would warrant a person of reasonable caution' in the belief that 'the articles sought' are at a particular place." Id. (quoting $149,422.43, 965 F.2d at 874) (citation omitted).

Moreover, the Tenth Circuit has "long recognized that magistrate judges may 'rely on the opinion' of law enforcement officers 'as to where contraband' or other evidence 'may be kept.'" Id. (quoting United States v. Hargus, 128 F.3d 1358, 1362 (10th Cir. 1997)). Therefore, in some cases,

an affidavit containing an officer's statement that "certain evidence–in his or her professional experience–is more likely to be found in a defendant's residence" has been sufficient to show a nexus; however, "an affiant officer need not draw an explicit connection between a suspect's activities and his residence for a Fourth Amendment nexus to exist." Id. (citations omitted).

Officer Campbell's affidavit explains that she has training and experience in the investigation of individuals who illegally possess firearms, and she has investigated violations of 18 U.S.C. § 922(g)(1) since 2005. Based on her training and experience, she knows that most people store their firearms and firearm-related documents in their homes, businesses, and vehicles, and that they usually possess other items related to firearms, such as ammunition. Officer Campbell also averred that, based on her training and experience, she knows that firearms are tangible objects of habitual retention; therefore, once a person acquires a firearm, he or she usually keeps said weapon for a long period of time. The affidavit explains that an ATF investigation determined that an individual with the username Ozarkcart purchased "parts kits" on Gunbroker.com, that Andrew Pierson is the registered agent for a limited liability company named Ozark Cartridge and Die Supply, and that the address listed for the registered agent is 54990 E 340 Road, Jay, Oklahoma. In addition, records from the Delaware County Treasurer's Office, the Delaware County Assessor's Office, and the Oklahoma Drivers License database indicated that Pierson's residence is located at 54990 E 340 Road, Jay, Oklahoma. Because the magistrate judge was permitted to rely on Officer Campbell's opinion that firearms, ammunition, and firearm-related documents are often kept in the individual's residence, and because the affidavit provides information sufficient to show that Pierson's residence is located at 54990 E 340 Road, Jay, Oklahoma, the Court finds that the affidavit provides sufficient

support for the proposition that there was a fair probability that evidence would be found in the residence located at 54990 E 340 Road, Jay, Oklahoma.

### B. Purchases Occurring Three Months to One Year Before Search Warrant

Defendant argues that the evidence contained in the affidavit was stale, because the purchases of the items by Ozarkcart occurred three months to one year before the search warrant. "Probable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." United States v. Snow, 919 F.2d 1458, 1459 (10th Cir. 1990). "[W]hether information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." Id. at 1460. Moreover, "'ongoing and continuous activity makes the passage of time less critical' when judging the staleness of information upon which a search warrant is based. United States v. Mathis, 357 F.3d 1200, 1207 (10th Cir. 2004) (quoting Snow, 919 F.2d at 1460).

Here, the property to be seized was firearms and ammunition, and the nature of the criminal activity was the possession of such firearms and ammunition. As noted, Officer Campbell averred that, based on her experience and training, she knows that firearms are tangible objects of habitual retention, and once a person acquires a firearm, he or she usually keeps said weapon for a long period of time. Moreover, she explained that individuals often store such items in their homes. Therefore, it was reasonable for a magistrate judge to determine that, based on the evidence showing that defendant had purchased firearms three months prior, there was probable cause to believe that defendant continued to possess those items. Moreover, the affidavit states that defendant had purchased at least 221 items from Gunbroker.com over a period of two years. Accordingly, the affidavit suggests that defendant was engaged in the ongoing and continuing possession of firearms

11

and/or ammunition. Therefore, the Court finds that the magistrate judge had a substantial basis for determining that firearms and/or ammunition would be found inside defendant's residence at the time of the search warrant, and the information relied upon was not stale.

### C. Explanation of How Affiant Concluded that Ozarkcart Was/Is Defendant

The affidavit explains that an ATF investigation determined that an individual with the username Ozarkcart purchased "parts kits" on Gunbroker.com, that Andrew Pierson is the registered agent for a limited liability company named Ozark Cartridge and Die Supply, and that the address listed for the registered agent is 54990 E 340 Road, Jay, Oklahoma. The affidavit does not explain how the ATF agents discovered Ozark Cartridge and Die Supply or why they believed that it was connected to the username Ozarkcart, but the reasonable inference is that the username Ozarkcart derived from the company name Ozark Cartridge and Die Supply. As the affidavit indicates, the registered agent of Ozark Cartridge and Die Supply is Andrew Pierson.

The Court finds that the magistrate judge had a substantial basis to determine there was probable cause to find that Ozarkcart is short for Ozark Cartridge and Die Supply, that defendant is the registered agent of Ozark Cartridge and Die Supply, and that, therefore, Ozarkcart is defendant.

### D. Determination That Pierson Actually Resided In Place to be Searched

Although Pierson was no longer residing at 54990 E 340 Road, Jay, Oklahoma at the time the warrant was executed, the affidavit provides substantial information in support of the determination that Pierson was living at that residence. Specifically, the affidavit states that the 2013 tax rolls provided by the Delaware County Treasurer's Office list Andrew Pierson as owning 10 acres of land at that address. Moreover, as of July 24, 2014, the Oklahoma Secretary of State website stated that Pierson is the registered agent for Ozark Cartridge and Die Supply, with his

address listed as 54990 E 340 Road, Jay, Oklahoma. Further, the affidavit states that the Delaware County Assessor's Office verified that as of August 14, 2014, Pierson owned the property located at 54990 E 340 Road, Jay, Oklahoma. Finally, the affidavit states that the Oklahoma Drivers License database records for Oklahoma drivers license number G083011284 pertaining to Andrew Scott Pierson lists a home address of 54990 E 340 Road, Jay, Oklahoma. Moreover the license was renewed in May 2012. Accordingly, the affidavit provides substantial information to support a probable cause determination that Pierson resided at 54990 E 340 Road, Jay, Oklahoma, at the time the search warrant was issued.

Based on the totality of the circumstances, the Court finds that the magistrate judge had probable cause to issue a search warrant for the residence located at 54990 E 340 Road, Jay, Oklahoma.

### III.

In its response to the motion to dismiss, plaintiff argues that, even if the Court concludes probable cause did not exist, the good faith exception precludes the application of the exclusionary rule.

The Supreme Court has held that, when police officers act in good faith and in reasonable reliance on a search warrant, the evidence obtained during the search should not be suppressed even if the warrant was lacking in probable cause. United States v. Leon, 468 U.S. 897, 913 (1984); United States v. McKneely, 6 F.3d 1447, 1453-54 (10th Cir. 1993). There is a presumption that, when an officer relies on a warrant, the officer is acting in good faith. McKneely, 6 F.3d at 1454. This presumption is "not absolute," but it "must carry some weight." Id. (quoting United States v. Cardall, 773 F.2d 1128, 1133 (10th Cir. 1985)).

However, the good faith exception does not apply in four situations:

> (1) when "the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for 'his reckless disregard of the truth'"; (2) when the "issuing magistrate wholly abandon[s her] judicial role'"; (3) when "the affidavit in support of the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'"; and (4) when "a warrant is so facially deficient that the executing officer could not reasonably believe it was valid."

United States v. Augustine, 742 F.3d 1258 (10th Cir. 2014) (quoting United States v. Danhauer, 229 F.3d 1002, 1007 (10th Cir. 2000); and Leon, 468 U.S. at 923) (alteration in original). Further, the Tenth Circuit has held that the good faith exception "will not save an improperly executed warrant." United States v. Rowland, 145 F.3d 1194, 1208 n.10 (10th Cir. 1998) (citing United States v. Moland, 996 F.2d 259, 261 (10th Cir. 1993)).

Here, the ATF agents relied on a search warrant and the Court must presume that the agents were acting in good faith unless one of the four situations identified above applies. Defendant does not argue that the affidavit contains information that the affiant would have known was false if not for a reckless disregard of the truth; nor does defendant argue that the magistrate judge abandoned his judicial role. As discussed above, the Court finds that the magistrate judge had a substantial basis for determining that probable cause existed. Finally, the warrant clearly identifies the place to be searched and the items to be seized; therefore, the warrant is not facially deficient. Accordingly, the Court finds that, even if the Court were to conclude that probable cause did not exist, the good faith exception to the exclusionary rule would apply.

**IT IS THEREFORE ORDERED** that defendant's motions to quash search warrant and to suppress evidence (Dkt. ## 19, 20) are **denied**.

**DATED** this 7th day of February, 2019.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE